Jackson v. Dooley 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-002-CV

     JAMES R. JACKSON, D/B/A FOSSIL RIM RANCH,
                                                                                              Appellant
     v.

     CHARLES L. DOOLEY AND LADY KATHRYN DOOLEY,
     D/B/A WHITE ROCK RANCH,
                                                                                              Appellees
 

From the 18th District Court
Johnson County, Texas
Trial Court # 203-89
                                                                                                    

O P I N I O N
                                                                                                    

      On July 15, 1988, James R. Jackson, doing business as Fossil Rim Ranch, contracted to sell
his entire 1988 "hatch" of ostrich chicks to Charles L. Dooley and Lady Kathryn Dooley, doing
business as White Rock Ranch. The Dooleys agreed to pay $1500 for each acceptable ostrich, and
Jackson agreed to make the chicks available on a monthly basis as they reached four months of
age. On December 1, while taking delivery of twelve ostrich chicks, Charles Dooley also
purchased a twelve- to fifteen-month-old deformed ostrich, which Jackson's employees had sexed
as a female, for $2500.
      On June 6, 1989, Jackson sued the Dooleys for breach of contract, alleging that they had
failed to pay a balance of $31,000 due on the contract to purchase the 1988 hatch. On December
5, the Dooleys counterclaimed for fraud, constructive fraud, negligence, and deceptive trade
practices, alleging that they had suffered damages as a result of Jackson's misrepresentation of the
sex of the deformed ostrich sold to Charles Dooley in December 1988. On December 13, the
court entered an interlocutory summary judgment awarding Jackson $28,500 on his breach of
contract claim against the Dooleys. During the non-jury trial on the Dooleys' counterclaim, the
Dooleys abandoned the fraud causes of action. The court entered judgment awarding the Dooleys
$29,000 on their counterclaim, offset by the $28,500 previously awarded to Jackson. The trial
court also awarded the Dooleys $1000 as additional damages


 plus attorney's fees. We reverse
the judgment of the trial court on the Dooleys' counterclaim, render judgment that the Dooleys
take nothing, and render judgment in favor of Jackson for $28,500, plus his reasonable attorney's
fees, as stipulated by the parties, and the court costs paid by Jackson.
      The trial court made a number of findings of fact that neither party challenges by point of
error. These findings are, therefore, binding on this court.


 The trial court found that the Dooleys
paid all sums due under the contract except for $28,500. The court also found that on December
1, 1988, the Dooleys agreed to buy and Fossil Rim agreed to sell "one certain female ostrich" for
$2500; that Fossil Rim delivered to the Dooleys a male ostrich instead; that Fossil Rim represented
to the Dooleys that it had sexed the ostrich as a female; that Fossil Rim's representation regarding
the sex of the ostrich was false; that Fossil Rim's representation was negligently made; that the
Dooleys relied upon Fossil Rim's representation; and that the Dooleys learned the ostrich was a
male in January 1989 and notified Fossil Rim in February 1989. Finally, the court found that the
value of a female ostrich at the time of purchase was $2500.
      In points of error one, four, and five, Jackson complains that the court erred in concluding
that the Dooleys were damaged in the amount of $29,000 and that there is legally or, in the
alternative, factually insufficient evidence to support such a finding of fact. When a complete
statement of facts appears in the appellate record, the trial court's fact findings that are challenged
on appeal are reviewable for legal and factual sufficiency of the evidence by the same standards
that are applied in reviewing the sufficiency of the evidence supporting jury findings.


 In a no-evidence point, only the evidence and inferences that support the challenged finding will be
considered, and all contrary evidence and inferences will be disregarded.


 In a factual-sufficiency
point, all of the evidence will be considered and the finding will be set aside only if the evidence
is so weak or the finding so against the great weight and preponderance of the evidence that it is
clearly wrong and unjust.



      Charles Dooley testified that Bruce Williams, the director of the wildlife center at Fossil Rim
Ranch, did not want to sell the deformed ostrich because it obviously had crooked toes. He also
admitted that they still owed Jackson $31,000. The Dooleys called Dale Cootey to testify as an
expert ostrich producer and broker. Cootey testified, over Jackson's objection, that at the time
of trial a two- to two-and-a-half-year-old female, assuming the ostrich was fine, would be worth
$25,000 to $30,000. Cootey also testified that a two-and-a-half-year-old male ostrich that is
normal, good, and salable would be worth $10,000 to $12,000. Cootey, who examined the
deformed ostrich three weeks before the trial, attributed its extremely defective feet to genetic
problems. According to Cootey, a male in that condition would be worth absolutely nothing. 
Although he testified that, because of the implications, he would not want a female ostrich with
extremely defective feet, Cootey never provided any evidence on the value of a deformed female
ostrich of any age.
      David Owen, a veterinarian, testified that he would not purchase a genetically defective
ostrich for breeding. He also testified that, although the common practice was to replace a
missexed ostrich with a female of the same age, he would not replace the deformed male ostrich
with a normal female ostrich because the Dooleys purchased the deformed ostrich at a discount. 
According to Owen, a one-year-old female ostrich that was in good shape in December 1988
would have been worth $8000 to $10,000, maybe $11,000.
      Bruce Williams testified that he told Charles Dooley before December 1988 that they were
not interested in selling the deformed ostrich because they could not speculate how its foot
problems might affect it in the future. Rodney Marsh, the animal care specialist at Fossil Rim
Ranch, also testified that, because of some problems with its feet, they did not want to sell the
deformed ostrich to Charles Dooley. According to Marsh, a twelve- to fifteen-month-old male
ostrich with deformed feet was worth $1500 to $3000 on December 1, 1988. He also testified that
a twelve- to fifteen-month-old female ostrich in the same condition was worth $2500 on December
1, 1988. Finally, Jackson testified that, if he had been informed in February 1989 that the bird
had been missexed, he would have offered to refund the purchase price or credit the Dooleys'
account $2500.
      The dispositive issue in this case is the correct measure of damages. In a DTPA case, the
consumer is entitled to actual damages.


 The Supreme Court has defined actual damages as those
recoverable at common law.


 Under common law, there are two measures of damages for
misrepresentation: (1) the "benefit of the bargain" measure, which is the difference between the
value as represented and the value actually received; and (2) the "out of pocket" measure, which
is the difference between the value of that which was parted with and the value of that which was
received.



      The Dooleys burden of proof in this case was to show either the difference between the value
of the ostrich as it was represented (deformed female) and the value of the ostrich as delivered
(deformed male); or the difference in value between that with which they parted ($2500 charged
to their account) and that which they received (a deformed male ostrich).


 The DTPA permits a
consumer to recover either "benefit of the bargain" or "out of pocket" damages, whichever is
greater.



      The evidence is legally insufficient to support a finding, under the "benefit of the bargain"
measure of damages, that the Dooleys were damaged in the amount of $29,000. The only
evidence on the value of the ostrich as it was represented was Marsh's testimony that a twelve-
to fifteen-month-old female ostrich with deformed feet was worth $2500 on December 1, 1988. 
The only evidence on the value of the ostrich as delivered was Marsh's testimony that a twelve-
to fifteen-month-old male ostrich with deformed feet was worth $1500 to $3000 on December 1,
1988, and Cootey's testimony that, at the time of trial, a male ostrich with extremely defective feet
would be worth absolutely nothing. Considering only the evidence that supports the court's
finding, we hold that there is no evidence to support "benefit of the bargain" damages greater than
$2500 (the difference between $2500 and $0). 
      Likewise, the evidence is legally insufficient to support a finding, under the "out of pocket"
measure of damages, that the Dooleys were damaged in the amount of $29,000. The parties
stipulated that the Dooleys purchased the ostrich from Jackson for $2500. Therefore, the value
of that with which they parted was $2500. Again, the only evidence on the value of that which
they received was Marsh's testimony that a twelve- to fifteen-month-old male ostrich with
deformed feet was worth $1500 to $3000 on December 1, 1988, and Cootey's testimony that, at
the time of trial, a male ostrich with extremely defective feet would be worth absolutely nothing. 
Considering only the evidence that supports the court's finding, we hold that there is no evidence
to support "out of pocket" damages greater than $2500 (the difference between $2500 and $0). 
Because there is no evidence that the Dooleys were damaged in the amount of $29,000, we sustain
point of error four.
      Because the court erred in concluding that the Dooleys were damaged in the amount of
$29,000, we also sustain point of error one. As a result, we reverse the court's judgment on the
Dooleys' counterclaim and render judgment that the Dooleys take nothing. However, the court's
judgment awarding Jackson $28,500 in damages (the difference between the $31,000 balance due
on the contract and $2500 in damages awarded to the Dooleys) is supported by the evidence under
either measure of damages and is not challenged by either party on appeal. Therefore we affirm
the court's award of $28,500 in damages to Jackson for the Dooleys' breach of contract.
      In points thirty-four through forty, Jackson complains that the court erred in failing to render
judgment for his reasonable attorney's fees, as stipulated by the parties, and the court costs paid
by Jackson. Section 38.001 of the Texas Civil Practice and Remedies Code provides that "[a]
person may recover reasonable attorney's fees from an individual or corporation, in addition to
the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."


 The
Dooleys argue that Jackson failed to satisfy the procedure for recovery of attorney's fees, as
provided by section 38.002 of the Texas Civil Practice and Remedies Code.


 The burden of proof
is on the plaintiff to plead and prove that presentment of a contract claim was made to the
defendants and that the defendants failed to pay within thirty days after the claim was presented.


 
Jackson's petition specifically alleged that: "Plaintiff has demanded payment from the Defendants,
but despite such demand, Defendants continue to refuse to pay the amount due and owing." In
Nettles v. Del Lingco of Houston, the court held that the plaintiff's pleading, "that demand has
been made therefore and payment refused," was insufficient to sustain a claim for attorney's fees.


 
However, in Paramount Pipe & Supply Co., Inc. v. Muhr, the Texas Supreme Court concluded
that, although similar pleadings would have been subject to attack by special exception, the
petition gave the defendants notice that the plaintiff was seeking recovery of attorneys fees.


 
Therefore, we find that Jackson has satisfied his burden of pleading and proving his presentment
of the contract claim and the Dooleys' failure to pay within thirty days after presentment. 
      The award of reasonable attorney's fees to a plaintiff recovering on a valid claim founded on
a written or oral contract, preceded by proper presentment of the claim, is mandatory.


 As in
Caldwell, we hold that the court abused its discretion in denying Jackson's attorney's fees
entirely.


 However, we need not remand the cause to the trial court for determination of
Jackson's reasonable attorney's fees because they were stipulated by the parties to be $10,189.69
for trial, $5000 for appeal to this court, and $5000 for appeal to the Supreme Court. The
transcript also reflects that $206 in court costs were paid by Jackson. Therefore, we sustain points
thirty-four through forty and render judgment in favor of Jackson for his reasonable attorney's
fees, as stipulated by the parties, and the court costs paid by Jackson.
      We do not reach Jackson's remaining points of error. We reverse the judgment of the trial
court on the Dooleys' counterclaim, render judgment that the Dooleys take nothing, and render
judgment in favor of Jackson for $28,500, plus reasonable attorney's fees of $10,189.69 for trial,
$5000 for appeal to this court, and $5000 for appeal to the Supreme Court, and court costs in the
amount of $206.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and rendered
Opinion delivered and filed June 17, 1992
Do not publish